UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
United States of America,                                        :
               Plaintiff,                            :
    v.                                                         : [22 Cr. 019 (PGG)]
Bradley Pierre, *et al.*,                                        :
               Defendants.                           :
---------------------------------------------------------------- X

## DEFENDANT DR. WILLIAM WEINER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

Sections V and VI of the Government's Motions *in Limine* discuss evidence that the Government proposes to introduce against Dr. Weiner. As set forth below, that evidence is not admissible against him. The remainder of the Government's Motions deal with evidence it seeks to admit against Mr. Bogoraz (Sections I, II, and IV). That evidence is not admissible against Dr. Weiner either, and the fact that the Government would seek to introduce it in a joint trial underscores the need for a severance. The Government's remaining arguments (Sections III, VII, and VIII) are speculative, cryptic and premature. Accordingly, the Court should decline to rule on those arguments without the benefit of a complete factual record. Furthermore, the Court should reserve ruling on the admissibility of the evidence described in Footnote 4 of the Government's Motions. ECF No. 289 at 17 n.4. Dr. Weiner believes that the evidence described in this footnote is inadmissible, but, as the Government concedes, the issue is not yet ripe for adjudication. Thus, Dr. Weiner reserves his objections to this evidence.

**I. Evidence of Bradley Pierre's Pre-Conspiracy Dealings With Unnamed Cooperating Witnesses is Inadmissible Against Dr. Weiner.**

In Section V of its Motions, the Government states that it "intends to call two additional cooperating witnesses ("CW-2" and "CW-3")[1] to testify that Bradley Pierre controlled their medical practices and coached them to lie to insurance companies in Examinations Under Oath between 2008 and 2015, and 2011 and 2014, respectively." ECF No. 289 at 24. The Government contends "[t]his evidence is admissible against Weiner to inform the jury about the background and formation of the charged conspiracy."[2] *Id.*

The Government is wrong, and its arguments distort the case law on the admissibility of background evidence of a conspiracy. The evidence at issue is barred by Rules 403 and 404(b) as prejudicial propensity evidence. Crucially, this evidence is not even evidence of *Dr. Weiner's* propensity to commit an illegal act. It is evidence of Pierre's (and apparently *the Government's witnesses'*) propensity for illegal conduct.

The Government seems to hope the jury will assume that evidence that Pierre historically instructed other doctors to lie during Examinations Under Oath (EUOs) would somehow suggest that he instructed Dr. Weiner to do the same. This "propensity evidence in sheep's clothing" is inadmissible against Dr. Weiner and it would be an abuse of discretion to allow the Government

---

[1] The Government has not yet identified these witnesses. Thus, it is difficult, if not impossible, for Dr. Weiner (and the Court) to evaluate fully the admissibility of their proposed testimony. Dr. Weiner respectfully reserves the right to object to any and all proposed testimony by these witnesses once their identity and the scope of their testimony is disclosed.

[2] The Government notably does *not* contend in its Motions *in Limine* that this evidence is admissible under Rule 404(b). For the reasons discussed herein, the proffered evidence is inadmissible propensity evidence and, in any case, would not be admissible under 404(b) as to Dr. Weiner. Conversations between Pierre and third parties unassociated with Dr. Weiner, dating back years before the charged conspiracy in this case, cannot possible show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as to Dr. Weiner, as the Government appears to concede. *See* Fed. R. Evid. 404(b)(2).

to present it to the jury. *United State v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (abuse of discretion to admit evidence of *defendant's* prior convictions for drug charges as proof of charged conspiracy).

The Government does not explain how this evidence is background of the *charged* conspiracy against Dr. Weiner. At best, it is evidence that Pierre (who will not be tried alongside Dr. Weiner) engaged in separate, uncharged conspiracies that did not involve Dr. Weiner. The fact that Pierre's "other crimes" committed with the Government's witnesses are similar to the allegations against Dr. Weiner does not make that evidence admissible at Dr. Weiner's trial. The rules of evidence do not "invite the Government 'to offer, carte blanche, any prior act of *the defendant* in the same category of crime.'" *United States v. Levin*, No. 15 CR. 101 (KBF), 2016 WL 8711458, at *5 (S.D.N.Y. Jan. 8, 2016) (quoting *McCallum*, 584 F.3d at 475) (emphasis added). This applies even more when the "prior acts" do not involve the defendant at all, as is the case here.

None of the cases cited by the Government supports its position. First, the Government relies on *United States v. Torres* for the proposition that evidence of Bradley Pierre's "other crimes" may be admitted against Dr. Weiner "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." ECF No. 289 at 25 (quoting 435 F. Supp. 3d 526, 530 (S.D.N.Y. 2020)). Yet, in *Torres*, the evidence the government sought to introduce primarily consisted of evidence *against the trial defendants*. *See generally*

*Torres*, 435 F. Supp. 3d at 528-29, 531-38 (discussing challenged evidence admitted against defendants).[3]

Furthermore, the cases cited in *Torres* do not support the Government's position. *Torres* cites to *United States v. Romero-Padilla*, 583 F.3d 126 (2d Cir. 2009) and *United States v. Pitre*, 960 F.2d 1112 (2d Cir. 2009). In both of those cases, the proffered "background evidence" *involved the trial defendant*. *See Romero-Padilla*, 583 F.3d at 130 (evidence of defendant and co-conspirator's "previous plans" to import narcotics admissible as background evidence of charged conspiracy); *Pitre*, 960 F.2d at 1117, 1119 (evidence of defendants prior drug transactions with co-conspirators was admissible to show that defendant was "not there just to be standing there" during drug transaction). Here, again, the evidence the Government seeks to admit does not involve Dr. Weiner in any way.

Second, the Government's reliance on *Levin* is entirely misplaced. The Government states that in "*United States v. Levin,* the Court allowed undercover recordings relating to prior criminal convictions of co-conspirators under Rule 404(b) because it 'may be probative of the organization of the charged fraudulent scheme and the plans and formula for success.'" ECF No. 289 at 25 (quoting *Levin*, 2016 WL 8711458, at *12). This mischaracterizes *Levin* in multiple, material ways. To start, the undercover recordings in *Levin* appear to have *involved the defendant*. *Id.* at *3 (noting the government sought to introduce "undercover recordings *of the defendants* and their co-conspirators engaging in the fraudulent scheme") (emphasis added). Further, in the section of the *Levin* opinion quoted by the Government, the court actually *excluded* the "other acts" evidence of

---

[3] The only criminal acts admitted as evidence in *Torres* that did not directly involve the defendants were two murders committed during the period of the charged conspiracy and in furtherance thereof—not evidence from an entirely separate conspiracy not involving the defendants (which is what the Government seeks to introduce here against Dr. Weiner). *See id.* at 534-35.

the defendant and his co-conspirators as not relevant, cumulative, and prejudicial under Rule 403. *Id.* at *12.

Third, the Government cites to *United States v. Shkolir*, 182 F.3d 902 (2d Cir. 1999), an unpublished opinion containing no background information on the evidence admitted at trial. A review of the district court's opinion, however, shows that the evidence admitted at trial was found *on the defendant's person* at the time of his arrest and, crucially, was admitted against the defendant as "background of the *charged* conspiracy." *United States v. Shkolir*, 17 F. Supp. 2d 263, 270 (S.D.N.Y. 1998) (emphasis added). Again, the other acts evidence admitted involved the trial defendant and, more to the point, it was background of the *charged* conspiracy. Here, the Government seeks to introduce evidence of other, historic, conspiracies, not involving Dr. Weiner, as "background evidence." This is improper and inadmissible.

Even if evidence that Pierre directed other physicians to lie during EUOs in the period before the charged conspiracy were theoretically admissible as "background evidence" (it is not), it should be excluded under Rule 403. Evidence that Bradley Pierre, at other times and with other individuals, participated in a crime similar to the one alleged against Dr. Weiner is highly prejudicial. It is the Government's burden to prove, as it alleges in its Motion, that "Pierre directed Weiner to lie under oath to insurance companies to conceal the healthcare fraud scheme." ECF No. 289 at 8. The Government has no such proof. Allowing the Government to present evidence that Pierre engaged in similar criminal conduct with the Government's witnesses would invite the jury to ascribe that conduct to Dr. Weiner and improperly fill a gap in the Government's case with "evidence" that expressly does not involve Dr. Weiner and cannot properly be admitted against him.

Finally, the prejudice caused by the introduction of this evidence cannot be cured by a limiting instruction, as the Government suggests. ECF No. 289 at 25-26. Indeed, the formulation of such a limiting instruction underscores the inadmissibility of the proffered evidence. The Court would need to instruct the jurors that evidence that Pierre directed the *Government's witnesses* to lie under oath outside of the charged conspiracy cannot be used as evidence that he directed Dr. Weiner to do so. An instruction on this point—far from curing any prejudice—may unduly emphasize and validate this so-called "background" evidence and actually invite the jury to do the very thing the Court would instruct them against.

The Government cannot be permitted to do as intended and base its case against Dr. Weiner on the criminal conduct of others. Thus, the evidence the Government seeks to introduce as described in Section V of its Motions *in Limine* must be excluded.

## II. The Evidence the Governments Seeks to Admit in Section VI of Its Motions Should Be Excluded.

In Section VI of its Motions *in Limine*, the Government states that it intends to elicit testimony from "a representative [of] Farmers Insurance Company" showing "that Weiner's false statements to insurance companies on bills and during EUOs were material." ECF No. 289 at 26. In a footnote, the Government reveals that it will make such a showing by posing "hypothetical questions about what Farmers Insurance Company would have done had it been aware of certain information." *Id.* at 26 n.5.[4]

As an initial matter, the Government's footnote about the admissibility of hypothetical questions is, at best, incomplete. A lay witness "may answer hypothetical questions if 'their

---

[4] Dr. Weiner believes this testimony may be improper expert testimony masquerading as fact or lay opinion. Without understanding who the witness is or what the testimony will actually be, however, Dr. Weiner cannot properly determine if this is the case. Consequently, Dr. Weiner reserves the right to make this objection at the appropriate time.

testimony is grounded in observation or other first-hand knowledge,' and the hypothetical is based on 'independently established facts.'" *United States v. Patel*, 2023 WL 2643815, at *44 (D. Conn. Mar. 27, 2023) (quoting *United States v. Graham*, 2019 WL 2366724, at *8 (S.D.N.Y. May 31, 2019) and *United States v. Cuti*, 720 F.3d 453, 459 (2d Cir. 2013)) (cleaned up). Thus, a lay witness can only answer hypothetical questions "about facts for which a foundation is laid in the record" and only if the witness will "apply a reasoning process similar to that in which the witness normally engages." *United States v. Velissaris*, 2022 WL 17076747, at *5 (S.D.N.Y. Nov. 18, 2022).

Dr. Weiner believes the Government's planned use of hypothetical questions to a lay witness from Farmers Insurance company will prejudice Dr. Weiner in two ways.

First, it is the Government's burden to show that any alleged misrepresentations by Dr. Weiner during any EUOs are "material." Thus, this is a determination properly made by the jury. Rule 701(b) states that lay opinion may be received in evidence only if it is "helpful" to the jury's "clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701(b). The Government has not explained how an insurance company witness's view of materiality will be "helpful" to the jury's determination, which should be based on its own independent evaluation of the evidence. To the contrary, posing hypothetical questions to a lay witnesses on what *that witness* believes is material improperly invites the jury to substitute the judgement of the witness for its own. Evidence that simply tells the jury what conclusion to reach on an issue properly decided by the jury alone is not admissible. *See United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) (concluding "that the Government has not met its burden of establishing the foundational requirement of Rule 701(b), which is designed to provide assurance against the admission of opinions which would merely tell the jury what result to reach."). Thus, because the hypotheticals bear a substantial risk that the jury will simply substitute the witness's

judgment for its own, hypothetical questions of the type the Government seeks to admit in Section VI of its Motions *in Limine* should be excluded.

Second, Dr. Weiner is concerned that the hypothetical questions posed to the witness from Farmers may prejudice Dr. Weiner by improperly assuming facts not in evidence, which could lead the jury to presume guilt based on questions, not facts, and confuse the jury as to what evidence and factual foundation have been properly admitted. The reason that hypothetical questions are permissible only when the proper factual foundation has been laid (as the cases above hold) is that hypotheticals may cause the jury to assume that the facts underlying the hypothetical have been established. Thus, even if the Court determines that the Government's hypothetical questions are admissible in this case (they are not), the Government must be required to lay the factual foundation for each hypothetical question *before* the witness from Farmers testifies. Otherwise, the Government will be permitted to improperly dress up argument as fact and mislead the jury.

### III. The Court Should Reserve Ruling on Sections III, VII, and VIII of the Government's Motions As to Dr. Weiner.

The Government's arguments on the admissibility or inadmissibility of the evidence described in Sections III, VII, and VIII are premature. Dr. Weiner points out that he does not yet know what the evidence described in Sections III, VII, and VIII is or may be, nor does he know (because the Government has not said) what witnesses this evidence will be offered through. Thus, Dr. Weiner cannot articulate properly arguments for or against the inclusion of the evidence described in these sections. The Government should not be permitted at this time to circumscribe the arguments and evidence Dr. Weiner will offer in his defense, either on cross-examination or affirmatively in Dr. Weiner's case.

The Government suggests that Dr. Weiner will offer inadmissible evidence of his "unblemished record." ECF No. 289 at 30. This presents the same issue described above. Because the Government has disclosed so little about its case thus far, Dr. Weiner has not yet formulated the arguments he will make in his defense. Furthermore, the Government seems to anticipate that Dr. Weiner's counsel will make these arguments in closing. *Id.* Whether an argument is proper at closing should be reserved until the close of evidence.

Because there is insufficient clarity as to the identity of the witnesses discussed in Sections III, VII, and VIII and insufficient clarity on the evidence discussed in Sections VII or VIII, Dr. Weiner respectfully requests the Court hold in abeyance any ruling on Sections III, VII, and VIII of the Government's Motions *in Limine* until the evidence and witnesses discussed therein are disclosed.

## **Conclusion**

For the foregoing reasons, Sections V and VI of the Government's Motions *in Limine* should be denied and the evidence described therein excluded. Further, the Court should reserve ruling on Sections III, VII, and VIII as well as on the admissibility of the evidence described in Footnote 4 of the Government's Motions. Dr. Weiner respectfully reserves the right to object to the remainder of the Government's Motions should the evidence the Governments seeks to admit therein become relevant to the case against Dr. Weiner.

| | |
|---|---|
| Dated: December 22, 2023 | **MAYER BROWN LLP**<br><br>*/s/ Kelly B. Kramer*<br>Kelly B. Kramer, Esq.<br>William D. Sinnott, Esq. (*pro hac vice*)<br>1999 K Street NW<br>Washington, DC 20006-1101<br>(202) 263-3007<br>kkramer@mayerbrown.com<br>wsinnott@mayerbrown.com<br><br>**RICHARD BEN-VENISTE PLLC**<br><br>Richard Ben-Veniste, Esq.<br>4315 50th Street NW<br>Suite 100, Unit 2636<br>Washington, D.C. 20016<br>(202) 631-1901<br>rbvlaw@yahoo.com<br><br>*Counsel for Doctor William Weiner* |