UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                     :

UNITED STATES OF AMERICA
                                                     :

       -v.-

                                                     :      22 Cr. 19 (PGG)

BRADLEY PIERRE, *et al.*,
                                                     :

                Defendants.
                                                     :
------------------------------------------------------------x

# GOVERNMENT'S OPPOSITION TO DEFENDANT WILLIAM WEINER'S MOTIONS IN LIMINE

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Mathew Andrews
Qais Ghafary
Michael Lockard
Assistant United States Attorneys
    -Of Counsel-

1

**PRELIMINARY STATEMENT**

The Government respectfully files this opposition to defendant William Weiner's motion *in limine* seeking: (1) to exclude evidence of the charged bribery scheme; (2) to exclude certain evidence regarding Moy; and (3) to exclude plea allocutions by Weiner's coconspirators. The Court should deny Weiner's motion in its entirety because the arguments are either moot or without merit.

**ARGUMENT**

**I.     Evidence of Bribery Is Admissible Because It Is Part of the Charged Healthcare Fraud Scheme**

Weiner first moves to exclude evidence that Pierre arranged for a cooperating witness ("CW-1") to pay bribes because the indictment "alleges two distinct conspiracies: (1) a Travel Act bribery conspiracy between Bradley Pierre and Arthur Bogoraz, and (2) a healthcare fraud conspiracy between Pierre and Dr. Weiner." This is incorrect. The Government has always alleged that the bribery conspiracy and healthcare fraud conspiracy are inextricably intertwined. The Government's evidence at trial will show that Pierre unlawfully controlled Nexray, that he CW-1 this fact, and paid CW-1 and others to fill his facility with patients through bribes in furtherance of this healthcare fraud scheme. Simply put, the healthcare fraud would not have been successful without the bribes to fill the facility.[1] Pierre's bribes are also powerful evidence of his unlawful control of Nexray because Pierre took on substantial financial risk to fill the facility with patients.

---

[1] Indeed, the Government will also introduce email exchanges showing that Weiner was aware that Pierre was paying "runners."

The jury can logically conclude that Pierre would not have paid over a $1 million in bribes unless he controlled Nexray and could ensure that he would be paid out of the facility's profits.

Moreover, even if the bribery and healthcare fraud conspiracies were separate (which they are not), Pierre's bribes would still be admissible. There is no question that Pierre's statement to CW-1 that Pierre controlled Nexray is admissible as a coconspirator statement in furtherance of the healthcare fraud conspiracy as well as a statement against penal interest. Pierre's bribe payments are accordingly admissible to explain how CW-1 and Pierre developed a relationship of mutual trust such that Pierre would have made such an admission. As the Court is aware, "it is within the trial court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *United States v. Diaz*, 176 F.3d 52, 79–80 (2d Cir. 1999) (brackets omitted). Likewise, "[i]n conspiracy cases, specifically, evidence of other crimes committed by defendants *or* coconspirators may be admitted 'to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed (emphasis added).'" *United States v. Torres*, 435 F. Supp. 3d 526, 530 (S.D.N.Y. 2020) (quoting *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000)). Thus, for instance, in *United States v. Shkolir*, the Second Circuit affirmed the introduction of evidence of multiple frauds, predating the charged conspiracy, by the defendant's coconspirators because the "frauds, which contained similar participants, victims, and fraudulent methods to the [charged] fraud, could help the jury understand the formation of the conspiracy by the other participants." 182 F.3d 902, *2 (2d Cir. 1999). Similarly, in *United States v. Levin*, the Court allowed undercover recordings relating to prior criminal convictions of co-

3

conspirators under Rule 404(b) because it "may be probative of the organization of the charged fraudulent scheme and the plans and formula for success." No. 15 CR. 101 (KBF), 2016 WL 8711458, at *12 (S.D.N.Y. Jan. 8, 2016).

For the foregoing reasons, evidence of Pierre's bribe payments is admissible because it is evidence of his unlawful control of Nexray and necessary to explain why Pierre's admitted to CW-1 that he controlled the facility.

## II. Evidence Relating to Pierre's Control of Moy's Practice and that Patients Received Unnecessary Treatments as a Result of Weiner's Falsified MRI Reports Is Admissible

Weiner next moves to exclude "evidence pertaining solely to Pierre's control of Moy's practice" and preclude evidence that "a patient at any point received unnecessary or painful treatments from Moy (or any other physician)."[2] These arguments are frivolous.

As an initial matter, the Government has charged Moy, Pierre, and Weiner as coconspirators and has always alleged that Pierre's control of Moy's practice was part-and-parcel of his healthcare fraud scheme with Weiner. The evidence at trial will show that Pierre unlawfully controlled Moy's medical practice (Rutland) and used his control to send victims to Nexray for MRIs. Once the victims arrived at Nexray, Pierre arranged for Weiner to falsify injuries in reports so that Pierre could bill insurance companies for unnecessary medical procedures at Rutland. This is the healthcare fraud.

Second, evidence that "a patient at any point received unnecessary or painful treatments from Moy (or any other physician)" is necessary to show motive and intent to defraud. From day one, the Government has alleged that Pierre (with Weiner's knowledge) arranged for a network of

---

[2] Weiner also moves to exclude "the fact of Moy's disappearance." The Government does not intend to introduce such evidence unless defense counsel opens the door through argument.

4

no-fault doctors and attorneys to refer patients to Nexray for MRIs. In order to boost these referrals, Weiner agreed with Pierre to falsify clinical findings of injuries on MRI reports and pressure radiologists working for Nexray to exaggerate findings of injuries in their own reports. These false clinical findings, in turn, allowed referring physicians and attorneys to bill for additional benefits under the No-Fault Law and obtain larger legal settlements and judgments.

The Government intends to introduce dozens of text messages between Bradley Pierre and Weiner discussing how referring physicians were "complaining" about normal MRI reports, that Weiner needed to "redo" the reports to find injuries, and that Weiner would lose business if he did not. The Government also intends to introduce testimony from multiple diagnostic radiologists that radiologists, such as Weiner, are trained about the clinical implications of identifying injuries in MRIs—specifically, the types of medical procedures required to treat such injuries. Lastly, the Government will offer documentation from patients' treatment files showing that they in fact received unnecessary medical treatments, including electromyography ("EMG") and nerve conductivity velocity ("NCV") testing.

This evidence is highly probative of motive (*i.e.*, Weiner why falsified injuries) and intent to defraud (*i.e.*, that the injuries were falsified to allow physicians to bill insurance companies for unnecessary treatments). This evidence is also not unduly prejudicial. The Government intends to elicit limited testimony about what types of unnecessary medical procedures are warranted to address the falsified injuries and a brief description of what these unnecessary procedures are. The Government will also elicit the fact that some of these procedures are painful to show that they would not have been done in the absence of the falsified injuries in the MRIs. Such evidence,

5

again, is necessary to show motive and intent to defraud—*i.e.*, that Weiner's falsified MRIs were a necessary step for conducting unnecessary treatments.

### III. The Government Does Not Intend to Offer Weiner's Coconspirator's Plea Allocution

As the Court is aware, Bradley Pierre has plead guilty and admitted under oath to the facts alleged in the indictment, including that Pierre paid bribes in furtherance of the healthcare fraud scheme, that he exercised control over Rutland and Nexray, that he coached Weiner to lie in EUOs, and that Weiner agreed to falsify injuries in MRIs to help referring physicians to conduct unnecessary medical treatments and thereby boost referrals. The Court knows the truth, and all that remains is presenting the evidence to the jury in Weiner's trial. The Government, however, does not intend to offer Pierre's plea allocution at trial because it is inadmissible on its own. The issue is therefore moot.

## CONCLUSION

For the foregoing reasons, the Court should deny Weiner's motions in limine in their entirety.

Dated: New York, New York
       December 23, 2023

                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney
                                    Southern District of New York

                            By:     /s/
                                    Mathew Andrews
                                    Qais Ghafary
                                    Michael Lockard
                                    Assistant United States Attorneys
                                    Southern District of New York