UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
United States of America,                          :

             Plaintiff,                          :

      v.                                                  :   [22 Cr. 019 (PGG)]

Bradley Pierre, *et al.*,                             :

            Defendants.                      :
------------------------------------------------------------------ X

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT WILLIAM WEINER'S MOTION *IN LIMINE*

The Government's Opposition (ECF No. 308) to Dr. Weiner's Motion *in Limine* raises a number of troubling issues about the Government's planned presentation to the Jury in Dr. Weiner's trial and, in any case, fails to show why Dr. Weiner's Motion *in Limine* should not be granted in its entirety. In its Opposition, the Government:

- Announces its intention to conduct a trial *in absentia* of Bradley Pierre and Marvin Moy in lieu of proving up its allegations against Dr. Weiner in the hope that the jury will attribute *those individuals*' criminal conduct to Dr. Weiner. The Constitution and the Rules of Evidence forbid this.

- Misstates the cases on the admissibility of "background" evidence of a conspiracy and seeks to stretch the law on this issue in unprecedented ways.

- Reveals that it intends to ignore the face of the indictment and try Dr. Weiner for bribery offenses for which he was not indicted by the Grand Jury.

- Declares that it intends to impugn Dr. Weiner with medical treatments that he did not authorize and that were provided to patients at other medical facilities.

Finally, the Government makes a flat-out false claim, specifically, that Mr. Pierre "admitted under oath" that he committed crimes with Dr. Weiner. Opp. at 6. In fact, Mr. Pierre agreed "not to contest" allegations in a statement of facts. The Government's suggestion that the Court "knows the truth" about Dr. Weiner's conduct based on Mr. Pierre's plea is profoundly improper.[1]

## I. The Evidence the Government Cites in its Opposition is Disconnected from Dr. Weiner.

The Government's Opposition confirms that it intends to showcase evidence of Mr. Pierre's guilt and use that evidence against Dr. Weiner. To a limited extent, this is permissible. Evidence of co-conspirator's actions taken in furtherance of the charged conspiracy is generally admissible against a defendant. But the Government's Opposition reveals a trial plan that stretches that principle beyond the limits of due process. A review of the evidence cited in its Opposition and in its Motions *in Limine* illustrates the problem.

*First*, the Government seeks permission to elicit testimony from two as-yet-unnamed "Cooperating Witnesses" to the effect that Mr. Pierre instructed them to lie in Examinations Under Oath (EUOs). According to the Government, these conversations took place *before* the time period of the conspiracy charged against Dr. Weiner. The Government seeks to suggest that, because Mr.

---

[1] The Government's recent press release is also improper. *See* New Jersey Man Pleads Guilty to Leading One of the Largest No-Fault Insurance Frauds in New York History (Dec. 18, 2023) (available at https://www.justice.gov/usao-sdny/pr/new-jersey-man-pleads-guilty-leading-one-largest-no-fault-insurance-frauds-new-york). Although the Press Release does not refer to Dr. Weiner by name, it obviously refers to him. Moreover, it couches the Government's claims as facts, not as allegations; it fails to note that Mr. Pierre made no admissions (again, he simply chose not to contest certain allegations); and it fails to inform the reader that Dr. Weiner is presumed innocent. The press release appears to be part of an effort to taint Dr. Weiner through innuendo and guilt by association.

Pierre instructed those physicians to lie, he probably instructed Dr. Weiner to do so too. Gov't Mots. *In Limine* (ECF No. 289) at 19-21.

As Dr. Weiner pointed out in his Opposition to the Government's Motions, this is not "background" of the *charged* conspiracy. Def's. Opp. (ECF No. 306) at 2-6. At best, it is evidence that Mr. Pierre engaged in a separate, prior conspiracy having nothing to do with Dr. Weiner. This evidence is "propensity evidence in sheep's clothing" and is clearly inadmissible. *See id.* at 2-3 (quoting *United States v. McCallum,* 584 F.3d 471, 477 (2d Cir. 2009)). Furthermore, there is no suggestion—let alone an allegation in the Second Superseding Indictment (SSI)—that Dr. Weiner was aware of or participated in these conversations.

***Second***, the cases the Government cites (and which it also mischaracterized in its Motions *in Limine*) do not support the proposition that evidence of Mr. Pierre's bribery is admissible against Dr. Weiner as background of the healthcare fraud conspiracy (nor are the conversations referenced above). In *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999), the "bad acts" evidence was used to show the gang association between the co-conspirators. But Dr. Weiner was not involved in the bribery scheme and so it is not background of *his* involvement in that misconduct (rather, it is a separate conspiracy). Likewise, in *Torres*, the evidence the government sought to introduce primarily consisted of evidence of a conspiracy in which the defendants participated or otherwise facilitated. *See generally United States v. Torres*, 435 F. Supp. 3d 526, 528-29, 531-38 (S.D.N.Y. 2020) (discussing evidence admitted against defendants).[2] The Government's reliance on *Levin* is equally (and entirely) misplaced. In *Levin*, the court actually limited "other acts" evidence (which

---

[2] The only criminal acts admitted as evidence in *Torres* that did not directly involve the defendants were two murders committed during the period of the charged conspiracy and in furtherance thereof—not evidence from an entirely separate conspiracy not involving the defendants (which is what the Government seeks to introduce here against Dr. Weiner). See *id.* at 534-35.

3

in that case all directly involved the trial defendants) that was "not sufficiently similar to the *charged* conspiracy to be relevant to the issues" alleged in the case. *See United States v. Levin*, 2016 WL 8711458, at *8, *12 (S.D.N.Y. Jan. 8, 2016) (emphasis added) (precluding the government from presenting evidence of other co-conspirators' acts dissimilar to the crimes with which the defendants were charged). Similarly, although the Government cites *United States v. Shkolir*, 182 F.3d 902 (2d Cir. 1999) (an unpublished opinion containing no background information on the evidence admitted at trial), the underlying district court opinion makes clear that the evidence admitted at trial was found *on the defendant's person* at the time of his arrest and, crucially, was admitted against the defendant as "background of the *charged* conspiracy." *United States v. Shkolir*, 17 F. Supp. 2d 263, 270 (S.D.N.Y. 1998) (emphasis added). In each of the cases cited by the Government, then, the other acts evidence admitted involved the trial defendant and, more to the point, it was background of the *charged* conspiracy. Not so here.

*Third*, the Government seeks leave to elicit evidence that Mr. Pierre paid bribes to someone (CW-1, whoever that might be) based on Mr. Pierre's boast that he "controlled" Nexray. The Government argues that: "[t]here is no question that Pierre's statement to CW-1 that Pierre controlled Nexray is admissible as a coconspirator statement in furtherance of the healthcare fraud conspiracy as well as a statement against penal interest. Pierre's bribe payments are accordingly admissible to explain how CW-1 and Pierre developed a relationship of mutual trust such that Pierre would have made such an admission." Opp. at 3. Even assuming that Mr. Pierre's hearsay statement that he "controlled Nexray" might be admissible if it was made in furtherance of the healthcare fraud conspiracy, it does ***not*** follow that evidence of "Pierre's bribe payments" should

4

be admissible as a consequence, particularly against Dr. Weiner.[3] There is no evidence that Dr. Weiner was aware of Mr. Pierre's statement to the as-yet unnamed CW-1 (and Dr. Weiner would have vehemently disagreed with Mr. Pierre if he had). The Government may want to allege the broadest possible conspiracy it can to take advantage of the leeway afforded by the Rules of Evidence, but that does not mean it can run wild and tar Dr. Weiner with conduct that even the Government's Opposition concedes he was not involved in (pointedly, Dr. Weiner's name is not mentioned even once on page 3 of the Opposition).

*Fourth*, the Government apparently seeks to admit evidence that physicians other than Dr. Weiner subjected patients to unnecessary and painful procedures. The SSI does not allege that the conspiracy involved this sort of conduct. Moreover, the Government does not (or it surely would have said) have any evidence that Dr. Weiner knew of the medical practices of *any* physician other than himself and his employees at Nexray. The Government should not be permitted to predicate its case against Dr. Weiner based on medical treatments as to which he had no knowledge, and which were provided by physicians over whom he had neither influence nor control.

*Fifth*, and relatedly, the Government states that it "intends to introduce testimony from multiple diagnostic radiologists that radiologists, such as Weiner, are trained about the clinical implications of identifying injuries in MRIs" and that it "intends to elicit limited testimony about what types of unnecessary medical procedures are warranted to address the falsified injuries and a brief description of what these unnecessary procedures are."[4] Opp. at 5. This is expert testimony

---

[3] The Government does not even try to connect the two. It simply makes the conclusory statement that, because Mr. Pierre made statements to individuals in the bribery conspiracy, *all* evidence of bribery is admissible. That simply does not make sense and certainly runs afoul of the guardrails provided by Rules 402 and 403.

[4] Dr. Weiner points out that the procedures cited by the Government (Opp. at 5) are *not* treatments that follow from a radiological diagnosis. Easily researchable information shows they are diagnostic in nature, which means they are not procedures that *treat* a problem, they are used to

5

—particularly if it is intended to explain to the jury that Dr. Weiner *should* have known about the treatments that would be offered by other physicians. The Government cannot use the fact that certain fact witnesses are physicians to bypass the required disclosures and rules regarding expert testimony in this case, and more to the point, the Government has presented no evidence that Dr. Weiner received the specific training these witnesses would testify he received.

**II.     The Grand Jury Did Not Indict Dr. Weiner on Bribery Charges.**

The Government states that it "has always alleged that the bribery conspiracy and healthcare conspiracy are inextricably intertwined" Opp. at 2. Respectfully, it matters not one iota what the Government has "always alleged." The only thing that matters under the Constitution is what the Grand Jury alleged in the indictment. *United States v. Lee*, 833 F.3d 56, 67 (2d Cir. 2016). And it is clear from the SSI that the Grand Jury did not indict Dr. Weiner on *any* counts related to the Travel Act bribery conspiracy. To borrow from the Government's phrasing, this is "powerful evidence" that the Grand Jury did not believe there was probable cause to charge Dr. Weiner with those offenses. If the Government alleged, as it maintains here, that the two conspiracies are one, why doesn't the indictment contain those allegations? And why isn't Dr. Weiner charged with any of the Travel Act offenses? The Government cannot use evidence for charges *not levied against Dr. Weiner* to improperly influence the jury and cause them to convict him on the *indicted* charges.

---

diagnose one (much like an MRI). *See* Reza Soltani Z, Sajadi S, Tavana B, *A comparison of magnetic resonance imaging with electrodiagnostic findings in the evaluation of clinical radiculopathy: a cross-sectional study*, Eur Spine J. (Apr. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3960424/; Hasankhani EG, Omidi-Kashani F. *Magnetic Resonance Imaging versus Electrophysiologic Tests in Clinical Diagnosis of Lower Extremity Radicular Pain*, ISRN Neurosci. (Jan. 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4045533/; *Nerve Conduction Study*, Cleveland Clinic (last accessed Dec. 29, 2023), https://my.clevelandclinic.org/health/treatments/24821-nerve-conduction-study. Why Dr. Weiner would be aware of the diagnostic procedures used by non-radiologists, the Government does not say.

The Government may be correct that evidence of the bribery scheme may influence the jury to "conclude that Pierre would not have paid over a $1 million in bribes unless he controlled Nexray and could ensure he would be paid out of the facility's profits." Opp. at 2. Unfortunately for the Government, this is precisely the prejudice that the Grand Jury protects defendants against. U.S. CONST. AMEND. V.

Furthermore, it is not sufficient that Pierre is charged in both the Travel Act bribery counts and the healthcare fraud counts. As Dr. Weiner pointed out both in his Motion *in Limine* and in his Motion to Sever, the fact that one individual is involved in two conspiracies is not enough to make evidence of the other conspiracy admissible (nor is it sufficient for joinder of two defendants not involved in both conspiracies). *See* Def's. Mot. *in Limine* (ECF No. 294) at 2-3; Mot. to Sever (ECF No. 302) at 4-5. And the Government effectively concedes that the bribery conspiracy and the healthcare fraud conspiracies are *not coterminous. See* Opp. at 4 ("The evidence at trial will show that Pierre unlawfully controlled Moy's medical practice (Rutland) and used his control to send victims to Nexray for MRIs. Once the victims arrived at Nexray, Pierre arranged for Weiner to falsify injuries in reports so that Pierre could bill insurance companies for unnecessary medical procedures at Rutland. *This is the healthcare fraud.*") (emphasis added). Thus, the Government cannot utilize Pierre's participation in both conspiracies against Dr. Weiner if Pierre is the sole link between the two conspiracies.

### III. Evidence Related to Pierre's Participation in the Travel Act Bribery Conspiracy is Not Admissible Against Dr. Weiner Under the Rules of Evidence.

Federal Rule of Evidence 402 states that only relevant evidence is admissible. Here, the Grand Jury, after considering the evidence presented, found probable cause to indict Mr. Pierre and Mr. Bogoraz—but *not* Dr. Weiner—for conspiring to violate the Travel Act. Similarly, after considering the evidence presented, the Grand Jury returned healthcare fraud charges against Dr.

7

Weiner that do not include any suggestion that the charged crime involved bribery in any way, shape, or form. (Nor is bribery necessarily implied; many—if not most—healthcare frauds do not involve bribery.) As such, there is no basis to conclude the Grand Jury authorized any bribery-related charges against Dr. Weiner. Allowing the Government to proceed on a bribery theory that was not authorized by (and perhaps was not even presented to) the Grand Jury would violate the Fifth and Sixth Amendments. Evidence of bribery is thus not relevant to the healthcare fraud counts as charged by the Grand Jury.

On page three of its Opposition, the Government makes a half-hearted attempt to show that the Travel Act bribery evidence is relevant to the charges against Dr. Weiner. But while the Government's argument is persuasive as to why that evidence would be relevant to *Mr. Pierre* (who, unlike Dr. Weiner, was charged with Travel Act bribery), the Government fails to explain how that same evidence would be relevant to Dr. Weiner (who was not). Indeed, Dr. Weiner's name does not appear *once* in this section. *See* Opp. at 3. This is because he was not involved in that conduct, as the Grand Jury clearly agreed. Dr. Weiner understands that the Government would like the upcoming trial to be a presentation of Mr. Pierre's criminality. But this is not the trial of Mr. Pierre.  It is the trial of Dr. Weiner. The Government cannot be permitted to seek a conviction of Dr. Weiner with evidence that is not relevant to the charges against him.

Rule 403 empowers the Court to shield the jury from evidence where the risk of prejudice to the defendant from introducing that evidence substantially outweighs its probative value. Both apply here to prevent the Government from tainting Dr. Weiner's trial with evidence of crimes for which he was not indicted and to which there is no direct evidence linking him. Mr. Pierre's misconduct is his own. It would be highly prejudicial for the Government to introduce evidence of Mr. Pierre's criminality against Dr. Weiner to attempt to secure the latter's conviction.

8

Moreover, it is also highly likely to confuse the jury into thinking that Dr. Weiner is charged with participating in a bribery conspiracy when, in fact, the indictment alleges no such thing. As a result, the Court should exclude the evidence under Rule 403, even if it does have some tangential relevance to the case against Dr. Weiner (which it does not).

### IV. Evidence of Unnecessary and Painful Treatments Performed Without Dr. Weiner's Knowledge Is Inadmissible.

The Government claims it has alleged from "day one" that "Pierre (with Weiner's knowledge) arranged for a network of no-fault doctors and attorneys to refer patients to Nexray for MRI." Opp. at 4-5. But that does not mean that Dr. Weiner had knowledge that other doctors would subject patients to painful or unnecessary treatments. More importantly, Count One of the SSI does not contain one single word referencing painful or unnecessary treatments. The Court cannot assume that the Ground Jury found probable cause to proceed on this theory. Thus, the Government is once again impermissibly expanding the findings of the Grand Jury to tar Dr. Weiner with conduct committed by others.

Crucially, as discussed above, the Government does not allege that Dr. Weiner knew how *any* of Nexray's patients were treated by other doctors after they received a scan. Absent such an allegation on the face of the indictment, evidence that any patients received painful or unnecessary treatments (treatments that were not recommended or performed by Dr. Weiner) would be highly prejudicial and should be excluded under Rule 403.

### V. The Government Mischaracterizes Mr. Pierre's Plea Allocution.

The Government acknowledges that it cannot attempt to introduce Mr. Pierre's plea allocution as evidence against Dr. Weiner. But the Government then improperly smears Dr. Weiner, in a public pleading, by stating that Mr. Pierre "admitted under oath . . . that he exercised control over Rutland and Nexray, that he coached Weiner to lie in EUOs, and that Weiner agreed

to falsify injuries in MRIs to help referring physicians to conduct unnecessary medical treatments and thereby boost referrals." Opp. at 6. This is false. Mr. Pierre did not admit any of these things; rather, he agreed *not to contest* a statement of facts attached to his plea agreement. The Government further attempts to prejudice Dr. Weiner in the eyes of this Court by claiming that the "Court knows the truth." *See id.* Respectfully, the Court does *not* "know[] the truth," because the Government has not established *any* facts showing Dr. Weiner's guilt. That is what the trial is for.

## Conclusion

The should grand Dr. Weiner's Motion *in Limine* in its entirety.

Dated: December 30, 2023

**MAYER BROWN LLP**

*/s/ Kelly B. Kramer*
Kelly B. Kramer, Esq.
William D. Sinnott, Esq. (*pro hac vice*)
1999 K Street NW
Washington, DC 20006-1101
(202) 263-3007
kkramer@mayerbrown.com
wsinnott@mayerbrown.com

**RICHARD BEN-VENISTE PLLC**

Richard Ben-Veniste, Esq.
4315 50th Street NW
Suite 100, Unit 2636
Washington, D.C. 20016
(202) 631-1901
rbvlaw@yahoo.com

*Counsel for Doctor William Weiner*