UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,

   - against -                              22 Cr. 00019 (PGG)

BRADLEY PIERRE, et al.,

        Defendant.

-------------------------------------------------------X

# MEMORANDUM IN OPPOSITION TO THE
# GOVERNMENT'S MOTIONS IN LIMINE

Dated: New York, New York
       January 4, 2024

Aaron M. Rubin, Esq.

99 Wall Street Suite 1130
New York, New York 10005
Tel.: (212) 725 - 4600
arubin@amresquire.com
*Counsel for ARTHUR BOGORAZ*

**PRELIMINARY STATEMENT**

This memorandum is respectfully submitted on behalf of Arthur Bogoraz in opposition to the Government's motions *in limine* filed December 15 at *ECF* 289. For the following reasons, the Government's *in limine* requests should be denied, or in the alternative, decision on the motions should be deferred until the relevant testimony at trial.

**RESPONSE TO ARGUMENT POINT I:**

**THE GOVERNMENT'S REQUEST TO ADMIT
THE POST ARREST STATEMENT SHOULD BE DENIED**

The Government requests permission to introduce custodial post-arrest statements by Mr. Bogoraz, claiming they are "admissible to show consciousness of guilt." The Government relies on United States v. Levy, 578 F.2d 896 (2d Cir. 1978) to support its request. The substance and the circumstances of the post-arrest statements that the Second Circuit found admissible in Levy are readily distinguished here.

The post-arrest statements at issue by the Government's request are contained in a type-written one-page report bates-stamped 3561-001 that was previously produced by the Government. These statements are more prejudicial than probative under Federal Rules of Evidence 403 and should be precluded from the trial. Unlike in Levy, Mr. Bogoraz makes no admissions, and his statements are clearly intended, as the Government notes, "to avoid either being remanded or to limit how long he has to be detained at MDC." (Gov't Mem. at 5)

In contrast, the statements in Levy, a narcotics prosecution, were given under the following circumstances: (1) the statements were made after defendant's arrest in a hotel; (2) the statements were made after defendant received *Miranda* warnings; (3) defendant told agents that he had previously cooperated with the Government on a prior case, and therefore sought to cooperate again; (4) defendant repeated his statements later that day at the DEA headquarters, and then to a prosecutor in a "prearraignment conference," and then provided more statements when he appeared the next day at DEA headquarters with his counsel, and, (5) subsequently, while out on bail, defendant met with an agent nine days later in which he provided further "incriminatory statements." Levy, 578 F.2d at 898-99.

In Levy, the statements at issue that the Circuit found to be admissible included (1) defendant's admission that he had "purchased the heroin from someone named Julio," (2) that he had previously cooperated in the past, and (3) his offers to cooperate in the future.

With respect to the offer to cooperate in Levy, while the Second Circuit found it admissible to show consciousness of guilt, the central point of distinction is that the defendant in Levy "made his offers of cooperation and attendant admissions without attaching any condition to his admissions." See Levy, 578 F.2d, at 901. To the contrary, Mr. Bogoraz's statements were intended, as the Government concedes, as part of a discussion to avoid remand.

Furthermore, the statements by Mr. Bogoraz are too general and conclusory to offer any probative value that would outweigh their clear prejudicial effect in front of the jury. The statements reference mostly individuals who are not even

involved in this case or charged with any crime, and do not specify the nature of the "criminal activity" alleged to be known, or whether it is relating to any material issue in this case. Further prejudicial effect will result from the issues raised by the Agent's testimony, and the necessary cross examination of that testimony, regarding these statements and in particular why Mr. Bogoraz was under duress to offer cooperation to avoid detention due to the court's remand order at the initial presentment.

**ARGUMENT POINT II:**

**THE GOVERNMENT'S REQUEST TO ADMIT PROFFER STATEMENTS SHOULD BE DENIED**

The Government seeks to introduce proffer statements by Mr. Bogoraz "to rebut certain defenses." The Government claims that Mr. Bogoraz "admitted to knowingly participating in the bribery scheme." (Gov't Mem. at 6) This claim itself is erroneous because it is not supported by the proffer session or the statements made therein. To start, Mr. Bogoraz never mentioned or referred to the terms "bribe," "scheme," or kickback. The Government mistakenly draws its own opportunistic conclusions from the proffer statements in an attempt to portray these conclusions as factual utterances, which will materially prejudice the defense in this case.

The Government requests admission of proffer statements to rebut affirmative assertions by the defense that "(1) Bogoraz did not know that CW-1 was paying for identifying information of motor vehicle accident victims, such as their names and phone numbers; (2) Bogoraz did not know that these payments were illegal or bribes; (3) CW-1 never sent motor vehicle accident victims to Bogoraz's law firm in return for kickbacks; (4) that Bogoraz did not know Pierre or know that Pierre was involved in

paying bribes; or (5) accuses a witness of fabricating an event or conversation with Bogoraz to which Bogoraz has admitted." (Gov't Mem. at 8-9)

However, the statements made in the proffer session do not contradict or rebut these defenses. To the contrary, the statements that the Government seeks to admit are conclusory, and not specific enough to have the type of probative value that outweighs their prejudicial effect. The proffer statements are recorded without the proper context because they do not record the questions to which the statements were made in response. The proffer statements are memorialized in a report, bates stamped 3561-001, at pages 2-3, which present one uninterrupted narrative without the substance, nature or even reference to the inquiries that prompted those statements. The format of the report and its recitation itself is therefore inherently prejudicial, which will similarly result in the prejudicial testimony of the Agent based on the substance of such a report.

Admission of the proffer statements will have further prejudicial impact by informing the jury that Mr. Bogoraz was in cooperation talks with the Government, suggesting a willingness to plead guilty and cooperate.

At a minimum, Defendant requests that the Government first provide notice of its belief that evidence or an argument inconsistent with Mr. Bogoraz's proffer statement has been offered at trial, before it seeks to introduce such proffer statements so that the Court can evaluate the circumstances at that time.

## ARGUMENT POINT III:

### THE GOVERNMENT'S REQUEST TO LIMIT CROSS-EXAMINATION OF THE CASE AGENT SHOULD BE DENIED

In the event that the Government is permitted to call one of its Agents to testify about Mr. Bogoraz's post-arrest or proffer statements, the Government seeks to limit any cross examination to "the scope of his direct examination." For this reason, the Government states that it has withheld from production certain prior statements of its Agent relating to the rest of the investigation. (Gov't Mem., at 9, fn 2). But under Rule 611(b) of the Federal Rules of Evidence to which the Government refers, the credibility of the Agent is nevertheless an appropriate, relevant and necessary subject of cross examination. The credibility of the Agent will be largely based on his conduct during the investigation, in which the Government concedes he played a significant role. Yet, without the relevant 3500 disclosures and prior statements and materials, the defense will be precluded from fairly testing the Agent's credibility.

As per the Agent's own reports purporting to memorialize the contents of Mr. Bogoraz's statements, the reports themselves are described to be part of an "Investigation," as they are expressly labeled as such. The Agent's attention to detail and thoroughness will be at issue, and only properly explored through cross examination on the subject of his practice of such note taking and report making during the course of the rest of the investigation. The Agent's motive to exaggerate when it comes to the prosecution of Mr. Bogoraz, for which this particular Agent was part of the prosecution team, will be at issue, and only explained by any selective process that he employed for

the collection of evidence in this case, and questions asked about the integrity of the investigation, or lack thereof.

The Government's attempt to limit cross examination would therefore be more reasonable if the proposed witness had no serious role in the overall investigation of Mr. Bogoraz in this case. But the fact that this particular Agent was closely part of the prosecution team necessitates that his conduct during the course of that investigation be subject to cross examination in order for the defense to have any meaningful opportunity to impeach his credibility.

Accordingly, the 3500 materials, prior statements and discovery should be disclosed and the Government's requested limitations denied.

## ARGUMENT POINT IV:

### THE GOVERNMENT'S REQUEST TO INTRODUCE MR. BOGORAZ'S PRIOR CONVICTION SHOULD BE DENIED

The Government requests permission to introduce the transcript of Mr. Bogoraz's guilty plea from 2013. This request should be denied because it will cause manifest prejudice to Mr. Bogoraz, with its only probative value to argue his propensity for the acts that are the very subject of the trial. Additionally, the Court should preclude Mr. Bogoraz's prior conviction for the purpose of impeachment should he elect to testify in his own defense.

In accordance with Rule 403, this Court should exclude otherwise "relevant" evidence if its probative value is substantially outweighed by a danger of one or more factors. Here, admitting this obvious propensity evidence will undoubtedly taint

the jury's perception and deny Mr. Bogoraz his right to a fair trial.  Furthermore, if the Government is permitted to use the prior convictions for the purposes of impeachment should he testify, it would effectively prevent Mr. Bogoraz from taking the stand on his own behalf.

There is no genuine basis to offer the prior conviction for a proper purpose, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  There are no relevant issues between the prior conviction and the instant charges that would permit the introduction of the prior conviction at trial.

The offenses charged herein do not involve the same individuals, same *modus operandi*, same locations, or similar alleged "money laundering/bribery schemes," and are not close in time to the present case, and as such, the probative value of Mr. Bogoraz's unrelated conviction will have no bearing on whether he has any culpability for the offenses charged herein.  To the contrary, introduction of the 2013 conviction and plea will undoubtedly confuse the jury, because the 2013 case involved a plea to *Mallela* type violations, which are the type of violations that will be explored in this trial in conduct for which Mr. Bogoraz was never charged here.  The confusion will be continued by the jury's consideration of "money laundering" in common to 2013 and the present trial, without the real ability to distinguish the material and necessary differences, including the nature of the alleged proceeds, e.g., bribery, and the fact that Mr. Bogoraz is not charged with involvement in medical clinics and healthcare fraud.

In sum, there is no non-propensity purpose for introducing Mr. Bogoraz's prior convictions.

## ARGUMENT POINT V:

## THE COURT SHOULD DENY THE GOVERNMENT'S INTRODUCTION OF BACKGROUND TESTIMONY

The Government's requested background evidence is unduly prejudicial with no probative value relative to Mr. Bogoraz, and should therefore be precluded. Mr. Bogoraz is not charged with healthcare fraud. Additionally, the requested evidence is outside of the time-period alleged in the indictment, and will cause unnecessary jury confusion.

## ARGUMENT POINT VII:

## THE GOVERNMENT'S REQUEST TO PRECLUDE CROSS EXAMINATION ABOUT A WITNESS'S EXTRAMARITAL AFFAIRS SHOULD BE DENIED

The Government's request to limit cross examination of its cooperating witness should be denied, with respect to both extramarital affairs and a prior drug conviction. In general, a witness's marital infidelity may be relevant to that witness's credibility. See United States v. Amato, 540 F.3d 153, 165 (2d Cir. 2008), abrogated on other grounds by Lagos v. United States, 138 S. Ct. 1684 (2018) (noting with the approval the district court's decision to "restrict[] questioning" about a "marital infidelity" that occurred "long in the past[,] while still allowing questions about more recent adultery"). Further in this case, the cooperating witness's affairs are relevant to the events at issue, as they were used as tools to achieve objects of the conspiracy in the manipulation of female co-conspirators.

Additionally, while the nature of the crimes that led to the cooperating witness's 1994 conviction may prove irrelevant, the fact that his release from prison occurred "within fifteen years" of his involvement in the crimes at issue here is probative of his bias and motive as a cooperating witness. See USSG § 4A1.2(e)(1) (defining "sentence of imprisonment" for purposes of computing a defendant's criminal history).

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant respectfully requests denial of the Government's motions *in limine*, or where appropriate, deferral of the decision until the relevant testimony at trial.

_____/s_____
Aaron M. Rubin, Esq.

99 Wall Street Suite 1130
New York, New York 10005
Tel.: (212) 725 - 4600
arubin@amresquire.com
*Counsel for Arthur Bogoraz*